1    Matthew Cruz, F-03927
     Mule Creek State Prison
2    P.O. Box 409060
     Ione, CA 95640
3
     In Pro Per
4



5                            *E-filing*

6

7

8              IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA   (PR)

10                       CV 08          2793

11   In re MATTHEW CRUZ        Docket No. _____

12                            NOTICE OF LODGMENT OF EXHIBITS
13                            SUPPORTING PETITION FOR WRIT
                              OF HABEAS CORPUS
     _____/
14

15       **ALL PARTIES HEREBY TAKE NOTICE** that petitioner in the above

16   entitled cause of action has lodged the below identified exhibits

17   with the above entitled court and which are offered in support

18   of petitioner's writ petition.

19       EXHIBIT A:  ABSTRACT OF JUDGMENT of the Superior Court.

20       EXHIBIT B:  Reporter's Transcript of Sentencing in the
21                   above entitled matter.

22       EXHIBIT C:  PRESENTENCING REPORT in the above entitled
                     matter.

23                            Respectfully submitted,

24   Dated: 5-23 08

25                            Matthew Cruz

26                            Matthew Cruz, In Pro Per

27

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**MATTHEW CRUZ,**
     Petitioner,

       v.

**RICHARD SUBIA,** Warden,
     Respondent.
_____/

DOCKET NO. _____

**VOLUME OF EXHIBITS
SUPPORTING PETITION FOR
WRIT OF HABEAS CORPUS**

FROM JUDGMENT OF THE SUPERIOR COURT

IN AND FOR THE COUNTY OF SONOMA

HONORABLE R.A. CHOUTEAU, JUDGE

Matthew Cruz F-03927
Mule Creek State Prison
P.O. Box 409060
Ione, CA 95640

_Matthew Cruz_

Matthew Cruz, In Pro Se

## IDENTIFICATION OF EXHIBITS

The below identified documents are true and correct copies of the documents they purport to be:

EXHIBIT A:  ABSTRACT OF JUDGMENT of the Superior Court in the above entitled matter.

EXHIBIT B;  Reporter's Transcript of Sentencing in the above entitled matter.

EXHIBIT C:  PRESENTENCING REPORT in the above entitled matter.

I declare under penalty of perjury the foregoing is true and correct. Executed at Mule Creek State Prison on August 21, 2007 by:

_Matthew Cruz_

MATTHEW CRUZ, PETITIONER

# EXHIBIT



FO 3927

**ABSTRACT OF JUDGMENT – PRISON COMMITMENT - DETERMINATE**
*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED]*

CR-290

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: **SONOMA**

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA vs.<br>DEFENDANT: **MATTHEW MANUEL CRUZ**    DOB: **08-27-84** | **ENDORSED<br>FILED** |

| | | |
|---|---|---|
| | MCR 448576 | -A |
| AKA: | | -B |
| CII#: | | |
| BOOKING #: | ☐ NOT PRESENT | -C |
| COMMITMENT TO STATE PRISON<br>ABSTRACT OF JUDGMENT | ☐ AMENDED<br>ABSTRACT | -D |

**NOV 2 2 2005**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

| DATE OF HEARING<br>11-16-05 | DEPT. NO.<br>4 | JUDGE<br>R. A. CHOUTEAU |
|---|---|---|
| CLERK<br>C. ROGERS | REPORTER<br>S. STANDISH | PROBATION NO. OR PROBATION OFFICER<br>119525 |
| COUNSEL FOR PEOPLE<br>D. GOMEZ | | COUNSEL FOR DEFENDANT<br>S. MURRAY    ☐ APPTD. |

1. Defendant was convicted of the commission of the following felonies:
   ☐ Additional counts are listed on attachment
   ___ (number of pages attached)

| CNT. | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY JURY | CONVICTED BY COURT | PLEA | TERM (L,M,U) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE 1/3 NON-VIOLENT | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 192 | VOLUNTARY MANSLAUGHTER | 2004 | 09-01-05 | | X | | U | | | | | | | 11 | 00 |
| 2 | PC | 186.22(a) | PART. IN CRIM. STREET GANG | 2004 | 09-01-05 | | X | | M | | | X | | | | | 8 |
| 3 | PC | 245(a)(1) | ASSAULT GBI | 2004 | 09-01-05 | | X | | M | | | X | | | | 1 | 0 |
| | | | | | · · | | | | | | | | | | | | |
| | | | | | · · | | | | | | | | | | | | |
| | | | | | · · | | | | | | | | | | | | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 12022(b) PC | 1Y | | | | | | | 1    0 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series).
   List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

4. ☐ Defendant was sentenced pursuant to PC 667 (b)-(i) or PC 1170.12 (two-strikes).

5. INCOMPLETED SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |
| | |

6. TOTAL TIME ON ATTACHED PAGES: [    ]

7. ☐ Additional indeterminate term (see CR-292).

8. TOTAL TIME EXCLUDING COUNTY JAIL TERM: **13    8**

INMATE COPY

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CR –290 (Rev. January 1, 2003)

**ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE**
*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED]*

Penal Code,
§§ 1213, 1213.5

# EXHIBIT



1    THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF SONOMA    ENDORSED
                                  FILED
3
                                  DEC 0 5 2005
4    HON. RENE AUGUSTE CHOUTEAU, JUDGE

5                                 SUPERIOR COURT OF CALIFORNIA
                                  COUNTY OF SONOMA
     THE PEOPLE OF THE STATE OF CALIFORNIA, )
6                                          )
                Plaintiff,                 )
7                                          )
          vs.                              )    No. MCR 448576
8                                          )    State Prison
     MATTHEW MANUEL CRUZ                   )
9                                          )
                Defendant.                 )
10   _____)

11              REPORTER'S TRANSCRIPT OF SENTENCING

12                    November 16, 2005

13

14   APPEARANCES:

15   For the People:        STEPHAN R. PASSALACQUA, District Attorney
                            By:  DIANA GOMEZ, Deputy
16                          600 Administration Drive, 212J
                            Santa Rosa, California 95401
17
     For the Defendant:     LOUIS HAFFNER, Public Defender
18                          By:  SCOTT MURRAY, Deputy
                            600 Administration Drive, 106J
19                          Santa Rosa, California 95401

20   Probation Officer:     NICOLE DeWITT

21

22

23

24

25

26

27                          SUSAN T. STANDISH, CSR No. 9272
                            Official Reporter
28

1      SANTA ROSA, CALIFORNIA; NOVEMBER 16, 2005; 2:43 P.M.

2                            --oOo--

3      THE COURT:  At this time I will call the Matthew Cruz

4  matter.

5      MS. GOMEZ:  We're going to have three family members of Mr.

6  Abadilla who wish to address the Court, and then we have an

7  approximately 15-, 16-minute videotape to be played, and we'll

8  waive the reporter.  It's just a song with some photographs in

9  the background.  I don't think that -- there's nothing there that

10  should be recorded.

11     THE COURT:  I appreciate that.  Do you also stipulate not

12  recording the video?

13     MR. MURRAY:  Yes.

14     MS. GOMEZ:  Thank you.  Your Honor, we're here for the

15  sentencing of Matthew Cruz for the homicide of Mr. Ricky

16  Abadilla.  The Court is aware of the facts since the Court heard

17  a very large portion of the trial, probably the most significant

18  witnesses that we had.

19         Mr. Abadilla, I think the Court can see by the number

20  of people present in court today, was very loved by his family,

21  and he wasn't the person that was portrayed in this courtroom in

22  the various motions.  He did have, you know, a side of him that

23  was involved in gangs.  We understand that.  But he also had

24  another side.  He's now the father of two twin boys here in the

25  back of the court.  I think they just had their year birthday.

26  Mr. Cruz was loved by both of his parents, his extended

27  family, his grandparents -- excuse me -- Mr. Abadilla.  And the

28  bottom line is I think the family is going to address how this

INMATE COPY

1

1  crime, how his death has impacted them.

2          But Mr. Abadilla did not deserve to die that day.  No

3  young man deserves to die in the manner Mr. Abadilla did,

4  certainly not by the hand of one of his friends or associates.  I

5  want to show the Court and Mr. Cruz the life that he took that

6  day because of whatever reason he had in his mind for taking that

7  life.  But he just did not take the life of Ricky Abadilla.  He

8  took the father of Ricky's kids.  He took the son.  He took -- he

9  was the son of Helen and Terrence Abadilla.  He was a grandson to

10  their parents.  He was a brother.  Mr. Abadilla's younger brother

11  and sister are here.  And this crime by Mr. Cruz has affected a

12  lot of people.  I want the Court to see -- this was -- and Matt

13  Cruz to look and see this was Ricky Abadilla.

14          This is a photograph of his girlfriend and the mother

15  of his children.  Ms. Burchett (phonetic) will be speaking.  This

16  is also Mr. Abadilla the day his children were born, his twin

17  boys.  And this is Mr. Abadilla the father, not the gang member,

18  but the father.  It was taken just before his death.

19          So this was a stipulated disposition with the People,

20  and we feel it was a fair disposition based on the facts that we

21  have, and I think Helen Abadilla would like to say some words.

22      THE COURT:  Ms. Abadilla, yes, if you'll come forward,

23  please.

24      MS. ABADILLA:  Helen Marie Abadilla.  I've attempted to try

25  to write something, but there is no words to express a mother's

26  pain when she loses a child, especially when the child is

27  murdered and taken from her.  My son Rick would have been 24.  I

28  had him 24 years ago and raised him in a good family environment.

INMATE COPY

1    Matthew Cruz, you have taken away something that you

2    cannot replace.  You can't bring back life.  I see that you don't

3    have any family here ever at your court hearings, and I feel

4    sorry for you for that matter from being a mother, but I have

5    seen no remorse or any sorrow in any of your actions during the

6    court case.

7    Rick had two boys.  He had a job.  He had a house,

8    and he had just bought a car.  He was running his own business

9    with his father and his brother, and you took that all away.  We

10    will never see Rick again, and it's because of a decision you

11    made.  I understand that my son at the first fight told you, are

12    you sure, dude, you want to do this?  And you said yeah.  And

13    then he helped you up when the fight was over and gave you a hug

14    and told you he loved you.  And that wasn't good enough for you,

15    I guess.  You had to go back because you got your ass beat.  It's

16    very sad.

17    I had so much more I wanted to say, but I can't even

18    think about it.  I didn't want to be angry when I came up here.

19    I was proud of my son, and I'm proud of my grandchildren.  And he

20    was a good guy.  Any time I needed him, he was there.  He more or

21    less was the driving force in my life since he was born, to be

22    something and to make something for him.  I have two other

23    children that have been affected by this.  His brother Adam,

24    which held him all the way to the hospital, and he apparently

25    died in his arms.  That's probably all I want to say.  I'm

26    sorry.  You can't replace what you took, Matthew Cruz, and I hope

27    one day you can understand inside your heart what you've done to

28    another family.  You tore it all apart.

INMATE COPY

1    THE COURT:  Thank you, Ms. Abadilla.

2    MS. GOMEZ:  Lisa Burchett would like to say a few words.

3  She was Ricky's long-time girlfriend and the mother of his two

4  children.

5    MS. BURCHETT:  What I have to say is directed mostly to him,

6  and I'd like to be able to look at him as I talk, if possible.

7    THE COURT:  You may do that.

8    MS. BURCHETT:  Can I stand in front of him?

9    THE COURT:  No.  I think you should stay there.  It's

10  better.

11    MS. BURCHETT:  February 19, 2004, was the day Ricky and I

12  had our first and only children, identical twin boys, Diamonte

13  and Viamonte (phonetic).  That was the day I thought was the

14  beginning of the rest of our lives together as a family forever.

15  I met Ricky in 1998.  Together we grew from teenagers into lovers

16  to best friends to young adults and then finally to parents.  Our

17  dreams and goals have combined into one.  All we ever wanted was

18  to live a happy, comfortable life raising our boys.

19    Ricky was so proud to be a father of two beautiful

20  sons.  We both felt very blessed.  He talked about taking them to

21  ball games and putting them in every sport possible.  I have

22  images of us going on camping trips.  Ricky was going to teach

23  them everything he knew.  For years I dreamed about what our

24  wedding would be like and how it would to be marry him, and I

25  wanted every single person, even his acquaintances, to there be

26  to witness us pledging our love for each other.  I imagined our

27  boys each walking down the aisle in white suits, each holding a

28  white pillow with a wedding ring tied to it.  I still to this day

INMATE COPY

1  think about all that stuff, and I can't believe it's never going

2  to happen.

3         You took all of that away from me, Ricky, and our

4  boys.  The future I believed in and all my hopes and dreams are

5  gone.  I'm now a single mother struggling to survive.  I don't

6  know what's going to happen to my children, and I no longer have

7  that picture perfect future I always dreamed of.  I don't know

8  anything.  Some days I don't even know who is going to watch my

9  boys so that I can go to work to provide for us, to keep a roof

10 over our heads and food in our mouths.

11        I feel so alone, and it's up to me and only me to be

12 responsible and give my sons the best life I can offer them, and

13 I'm mommy and daddy now.  I have so much pain and so much anger

14 and so much sadness, and I hate feeling this way.  I hate it.  I

15 often think of ways to make it all go away, but then I think

16 about my children, and I have to ask God to forgive me for

17 thinking if only I didn't have my children I could easily make

18 all of this go away, I could stop all the pain and hurt, and I

19 could reunite with the love of my life.

20        All I used to ever think about was being with him and

21 being happy again.  If making you the most powerful and richest

22 man in the world would mean my children would have their father

23 back, then that's what I would want.  Sitting in the cell day

24 after day, you must have some kind of idea of wanting something

25 so bad but no matter what you say or what you do it will never

26 happen.  You have no control over it.  Nothing I do or say can

27 bring back Ricky.

28        You have no idea what it's like to walk into a

INMATE COPY

5

1  mortuary and see the person you love more than life itself lying

2  there on a cold metal table, completely stiff, freezing cold and

3  colorless.  He was gray.  Ricky was no longer there.  It was just

4  his body lying there.  He was gone.  I had to dress his body and

5  comb his hair to prepare him for his funeral services.  You have

6  absolutely no idea what that's like.  It was the worst experience

7  of my life.  Something I'm never going to forget.

8        My boys were only seven months old when you took their

9  father away from us.  They will never get to know him.  They will

10  never get to feel the unconditional love he had for them.  He

11  didn't even get to see them first crawl or walk.  He didn't get

12  to be there for their first Halloween, Thanksgiving, Christmas,

13  or their first birthday.

14        I don't understand why this had to happen.  Ricky was

15  turning his life around for the family.  We were building

16  together.  And you knew this.  You knew he had children.  You

17  knew what him and I meant to each other.  You know all of this.

18  And you also know what a good friend and human being he was.  He

19  always went out of his way for people.  You've slept on our couch

20  in our home before.  Ricky once told me he gave you a pair of his

21  shoes.  I asked him why, and he said because you didn't have

22  any.  Ricky loved all his friends no matter how close he was to

23  them.  He proved to many that he was someone you could depend

24  on.  That was very important to him.  I used to get mad at him

25  and ask him why, what did they do for you?  If you need them, are

26  they going to be there for you?  And he would say it didn't

27  matter, that's me, that's the kind of person I am.  He didn't

28  need no favors in return.

INMATE COPY

6

1          I know that there's some family members of Ricky's who
2   are here today that, unfortunately, didn't get to know the man
3   Ricky was before he died.  You probably know a lot more about him
4   than they do.  So I hope today you'll stand up and tell them, I
5   hope you'll tell them what kind of friend he was to you and how
6   he always had your back.  Don't leave them with the image of
7   Ricky's mistakes he made in the past that you brought up in
8   court.  Tell them who he really is, because I know you know.  You
9   know he was a good man.  And if you have any kind of remorse for
10  what you've done and the friend whose life you took away, then I
11  hope that the day you walk out of prison with the rest of your
12  life ahead of you, you will have already made the decision to
13  better your life.  I hope you will do positive things with your
14  life.  I hope that Ricky's death has some kind of effect on you
15  and that this has been a life-changing experience for you,
16  because I know it has been for me and others who truly loved
17  Ricky.
18          I just want him back.  That's all I want.  I want my
19  old life back, and I want to be a family again.  And I read your
20  apology letter, and in it the way you apologize is like you're
21  talking about some guy you didn't even know that you killed.
22  This was someone who was your friend, someone who let you sleep
23  on our couch.  To me your apology sounds like you're more sorry
24  for yourself than you are for Ricky and his family.
25          That's all I have to say.
26      THE COURT:  Thank you.
27      MS. GOMEZ:  Ricky's father Terrence would like to say a few
28  words, and after that we have a video.

INMATE COPY

7

1    MR. ABADILLA: This is really hard for me. I can't believe

2    I'm standing here trying to plead for forgiveness for you. I

3    know in order for me to survive in my life I got to do what I got

4    to do. I just want to say your actions -- you're a coward. You

5    have no respect for life, no respect for your life, and you

6    disrespected my family, and you took my whole heart. I loved my

7    son.

8         Now you're going to pay for it. Now you got to deal

9    with your mistakes. That's between you and God. What I'm going

10   to do is I don't want to go into all the pain, because I can't

11   even explain the pain and suffering you caused this entire

12   family. So I'm just going to try to read this little thing that

13   I think that I feel that will send a message to all the loved

14   ones and all the families and my family, and that's all I can

15   deal with right now.

16        By the way, my name is Terrence Abadilla, and I am

17   Ricardo Abadilla's father. And right now I have to accept that

18   he's gone and he will never be back, but he'll always be in my

19   heart, and he's always a part of me and my family. You'll never

20   be able to take that. You'll never be able to take the memories

21   and the love from all these people. I just hope you really

22   realize the impact your decision -- you should have let it go.

23        It says: I am free. Don't grieve for me, for now  I

24   am free. I'm following the path God made for me. I took his

25   hand when I heard his call. I turned my back, and I left it

26   all. I could not stay another day to laugh, love, work, or

27   play. Tasks left undone must stay that way. I found a peace at

28   the close of the day. If my parting has left a void, then fill

INMATE COPY

8

1   it with remembering joy, a friendship shared, a laugh, a kiss, a

2   yes -- these things I, too, will miss.  But not burdened with

3   times of sorrow, I wish the sunshine of tomorrow.  My life has

4   been full.  I surveyed much -- good friends, good times, a loved

5   one's touch.  Perhaps my time seemed too brief.  Don't lengthen

6   it now with undue grief.  Lift up your heart and share with me.

7   God wanted me to know he set me free.

8           With the rustle of wings I'll take your memories along

9   as I soar up in the heavens from where they play that song.  Just

10  part your hands open as you feel my beating heart.  My soul is

11  alive as I now depart.  With the rustle of wings I enter the

12  pearly gates.  I'll be with family from long ago and for you I

13  will wait.  Always keep this feather close as a reminder of my

14  soul's release, and in every whisper of the wind you'll hear the

15  rustle of my wings.

16          The reason why I read this is because I feel that my

17  son was like that.  He had no vengeance, and he wouldn't want

18  vengeance.  He would just want the justice that needs to be done.

19  And believe me, there was several times justice was going to be

20  done.  But this hit me particularly because when we released

21  doves, I got a feather, and I cherish this feather.  And this is

22  all I got is a feather and pictures and a memory.

23          I don't know what more to say.  Just good luck.  You

24  got your own life to deal with at this point.  Hopefully, this is

25  all over and you can realize that your decision -- this whole

26  violence thing has just got to go.  It's not worth it.

27      THE COURT:  Thank you, Mr. Abadilla.

28      MS. GOMEZ:  Mr. Abadilla's aunt would like to say a few

INMATE COPY

1   phone that her son was dead, because of you.

2          You're going to go somewhere.  I hope you make it

3   out.  I do hope that you become somebody.  I hope you get out.  I

4   hope you lead a productive life, and I hope you never have to

5   have a child killed by another person.  That's pretty much it.  I

6   pray for you every day because that's what kind of family we

7   are.  I'm just sorry you never had that.  That's it.

8          THE COURT:  Thank you, Ms. Sandoval.

9          MS. GOMEZ:  If we could set up.  While we're setting that

10  up, I want to preface this.  And I hope Mr. Cruz watches this and

11  sees what type of life he took.  I would hope in the next 15

12  minutes you'd see what helps you understand the pain this family

13  has gone through and will go through the rest of their lives.

14  When you lose a child, you never ever forget it.

15                  (Film is shown.)

16         THE COURT:  Mrs. Gomez, do you have anything further?

17         MS. GOMEZ:  I just want Mr. Cruz to -- I hope that Mr. Cruz

18  in closing understands the man that Ricky Abadilla was, and this

19  Court, and I think the family appreciates very much that they got

20  to show this Court and Mr. Cruz and everybody else the man Mr.

21  Abadilla was.  And I know that they were quite chagrined to hear

22  the things about Mr. Abadilla that they heard, and that's part of

23  the process, and we get immune to it, but a family doesn't

24  understand why, when we go through the process that we did, the

25  Court and us and defense counsel and whomever don't see that part

26  of somebody's life.

27         And I thank the Court for giving us the time to show

28  that part of Mr. Abadilla's life.  And I hope that Mr. Cruz takes

INMATE COPY

1    that with him, and I also hope that Mr. Cruz finds the courage to

2    stand up and look that family in the eye and truly, truly

3    apologize to them.    I think they need that more than ever.    I

4    think would go a long way with them, and I hope Mr. Cruz can get

5    that courage.    When Mr. Cruz thinks about that, when you looked

6    at the videotape, you saw the smiles and the happiness when Mr.

7    Abadilla was alive.    And I've been with this family intimately

8    now for almost a year, and I've never seen one of them smile like

9    that, I've never seen one of them laugh like that.    I don't think

10    you're ever going to see them act like that again, and that's the

11    impact that Mr. Cruz has had on them.

12         The last song on there, where it started off he took

13    my brother Ricky's life, that was actually written and

14    performed by Mr. Abadilla's younger brother.    He didn't have --

15    he couldn't talk in front of the court today, but I think his

16    words were heard, and I think that was pretty much what he would

17    have said to the Court about his brother.    Thank you for your

18    time.

19         THE COURT:    Mr. Murray, did you have any comments?

20         MR. MURRAY:    May I have just a moment?

21         THE DEFENDANT:    I know some of you guys hate me right now,

22    but I would like to apologize for all the pain that I caused you.

23    I want you to know I'm deeply sorry for what happened, and I

24    don't believe Ricky was a bad person.    He wasn't a bad person at

25    all.    I apologize.    I don't know what else to say.

26         MR. MURRAY:    If I could make a very brief comment.    I'd just

27    like to say that Matt has expressed that to me many, many times

28    over the last year, and I would just like to say I think the

INMATE COPY

12

1 | things.

2 |    MS. SANDOVAL: Elizabeth Sandoval. You knew my nephew, and

3 | he was a good man. He was the hero to my children, but he was

4 | very wise, also, because my son wanted to go with his cousin

5 | sometimes, and Ricky told him, you can't go, you have to be good,

6 | you have to stay home and be good in school, and you have to be

7 | somebody.

8 |        My son is going to be a police officer to make sure

9 | that we take people like you off the streets. When Ricky died,

10 | he wanted nothing -- my son wanted to hurt you so bad, and he

11 | said mom, I'm not going to become a cop, I'm not. And I said

12 | yeah, you are, you have to make Ricky proud. And he's doing it

13 | today. He is going to. And he's going to do it in the memory of

14 | his cousin. But the main thing is I watch Lisa every day

15 | struggle. I see her at work. It's so hard for her.

16 |        And the fact that we have a court system that allows

17 | us -- gave you a chance -- a man would have just said I did it,

18 | sentence me, not try to plead not guilty, not try to find a way

19 | around. I am grateful to you for taking the plea and not making

20 | us go through day after day of trial, because you financially

21 | almost destroyed half of his family. We all lost work. We all

22 | lost sleep. My sister has worked maybe three months in the year,

23 | over a year since he died, because it's too much for her.

24 |        And somebody already said this. We have noticed that

25 | you have no family here, and I'm sorry, but Ricky was raised with

26 | a loving family, very supportive. He never got to say goodbye to

27 | his grandpa, who is with him now, thank God, but I had to call my

28 | sister at 1:54 in the morning and break the news to her INMATE COPY

1   Abadilla family has conducted itself with a lot of grace and a

2   lot of strength and integrity throughout this.  And I'm sorry you

3   had to go through that.

4            When Terrence was speaking it reminded me of a letter

5   that a civil war soldier wrote home when he had to go to battle

6   and he thought he wasn't going to make it.  And he wrote back to

7   his wife, and he had two young sons at home, and he talked about

8   not being able to see them grow up to honorable men.  But I think

9   the presentation today showed that Ricky had already gotten there

10  and had a lot more to do, and I know that Matt carries that

11  burden.  And I know that Matt and I have had conversations, and I

12  think this is something that's going to maybe push him towards

13  something positive in his life.  I know he feels that way.  And I

14  believe there is actually a strength in that to take the pain you

15  have all been feeling and that some of you expressed today, and

16  (inaudible).  And I hope he does that.

17            Thank you, Your Honor.

18       MS. GOMEZ:  Nothing further.

19       THE COURT:  Waive arraignment for sentencing?

20       MR. MURRAY:  Yes.

21       THE COURT:  Any legal reason why judgment should not be

22  entered at this time?

23       MR. MURRAY:  No.

24       MS. GOMEZ:  No.

25       THE COURT:  Mr. Cruz, your violent act has inflicted Mr.

26  Ricky Abadilla's mother, his father, his entire family with an

27  unthinkable tragedy, and this tragedy will now be put down on the

28  next generation.  He has two sons who will not have a father to

INMATE COPY

13

1 | raise them.  And for this the law exacts a punishment, and this
2 | punishment is appropriate and just to the crime which you have
3 | committed.  At this time the credits for time served will be
4 | calculated as 501 days, 436 actual, and 65 days conduct, and I
5 | will sentence you as follows:  I am denying probation in this
6 | matter based on the violent nature of the crime.  You are
7 | committed to the Director of the Department of Corrections and
8 | Rehabilitation for the term of 13 years, 8 months.
9 |     MS. GOMEZ:  Your Honor, he waived conduct credits.
10 |     THE COURT:  That's true.  The conduct credits are waived,
11 | and the credits should be amended to reflect that.
12 |     The sentence will be computed as follows:  As to Count
13 | I, the violation of 192 of the Penal Code, I'm imposing the high
14 | term based on the factors in aggravation and in particular your
15 | prior convictions and the fact you were on a conditional sentence
16 | at the time of the offense, and the nature of your conduct, to a
17 | term of 11 years.  There will be an enhancement for using the
18 | knife of 1 year, for a total of 12 years.
19 |     On Count II, a violation of 186.22(a) of the Penal
20 | Code, I am imposing one third of the midterm consecutively; and
21 | for Count III, violation of 245(a)(1) of the Penal Code, I am
22 | imposing one third of the midterm consecutively, which is a term
23 | of 1 year.  So the total aggravated term is 13 years 8 months.
24 | And I'm imposing consecutive sentencing based on the differing
25 | nature of the crimes and also upon the stipulation that was
26 | entered into in regard to sentencing.
27 |     You are to pay restitution in an amount to be
28 | determined by the victims compensation board, and that will be

INMATE COPY

14

1  collected by the Department of Corrections.

2          You are to provide blood and saliva samples to

3  establish your DNA.

4          You're to pay a restitution fine of $8,400 to be paid

5  as determined by the Department of Corrections.

6          You're to pay the $20.00 court security fee.

7          I'm imposing an additional restitution fine in the

8  same amount as the first fine, to be suspended unless your parole

9  is revoked.

10         And sir, you have been convicted of a felony.  You may

11 not own or have in your possession any firearm or ammunition

12 pursuant to Federal and State law.

13     MS. GOMEZ:  In addition to the restitution to be determined,

14 Mr. Cruz has agreed to restitution for burial expenses.

15     MR. MURRAY:  That's correct.

16     MS. GOMEZ:  Which will be determined an amount to be

17 determined by the victim.

18     THE COURT:  And then that will also be determined as a part

19 of the restitution.

20     MR. MURRAY:  That's correct.

21     THE COURT:  And to the members of Ricky's family, thank you

22 for coming in this afternoon and expressing your feelings to the

23 Court and Mr. Cruz.

24     MS. GOMEZ:  Thank you, Your Honor.

25     PROBATION OFFICER:  Probation would also request that the

26 defendant register as a gang member pursuant to Penal Code

27 186.30.

28     THE COURT:  You are to register as a gang member pursuant

INMATE COPY

1   to 186.30 of the Penal Code.

2            Court will be in recess until 10 minutes to 4:00.

3                 (Proceedings concluded.)

4   ----

5   ----

6   ----

7   ----

8   ----

9   ----

10  ----

11  ----

12  ----

13  ----

14  ----

15  ----

16  ----

17  ----

18  ----

19  ----

20  ----

21  ----

22  ----

23  ----

24  ----

25  ----

26  ----

27  ----

28  ----

INMATE COP

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SONOMA

HON. RENE AUGUSTE CHOUTEAU, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. MCR 448576 |
| ) | State Prison |
| MATTHEW MANUEL CRUZ ) | |
| ) | |
| Defendant. ) | |
| _) | |

STATE OF CALIFORNIA   )
                      )  ss
COUNTY OF SONOMA      )

I, Susan T. Standish, CSR No. 9272, Official Reporter of the Superior Court of the State of California for the County of Sonoma, do hereby certify that the foregoing is a true and correct transcript of the proceedings had at the time of pronouncing sentence, that the views and recommendations of the Court, if any, are contained therein, pursuant to the Penal Code.

Dated this November 19, 2005.

Susan Tutt
Official Reporter

INMATE COPY

# EXHIBIT



# SONOMA COUNTY FELONY PRESENTENCE REPORT

**HEARING DATE:** November 16, 2005
**TIME:** 9:00 AM
**DA FILE NO.:** 492128
**FILING DATE:** November 9, 2005
**ATTORNEY:** Public Defender
**BOX/ADDRESS:** N/A

**COURT CASE NO.:** MCR-448576
**COURTROOM:** 4
**PD FILE NO.:** 324
**PROBATION FILE NO.:** 119525
**CII NO.:** A22640453

---

**DEFENDANT:** MATTHEW MANUEL CRUZ    **AGE:** 21    **DOB:** 08/27/84

**CTS:** Count I: 436 + 65 = 501 days (Pursuant to 2933.1(a) PC). Count II: 0 days. Count III: 0 days. As we are recommending consecutive sentencing, and if sentenced as recommended, the defendant would not be entitled to overlapping credits pursuant to 2900.5(b) PC; however, should the Court decide to impose concurrent sentencing, CTS would be: Count I: 436 + 65 = 501 days, Count II: 65 = 501 days, Count III: 436 + 65 = 501 days. **AS OF:** November 16, 2005    **CUSTODY STATUS:** In custody.

**OFFENSE:** Amended Count I: Felony 192 PC, voluntary manslaughter (victim Ricardo Abadilla), a serious felony within the meaning of Penal Code Section 1192.7(c) and a violent felony within the meaning of Penal Code Section 667.5(c). Amended Count II: Felony 186.22(a) PC, participation in a criminal street gang. Amended Count III: Felony 245(a)(1) PC, assault by force likely to cause great bodily injury. Personal use of a knife enhancement pursuant to 12022(b) PC admitted as to Count I.

**CODEFENDANT:** N/A

**CONVICTION BY:** Plea of guilty entered as to Count I and pleas of no contest entered as to Counts II and III and admission of enhancement entered on September 1, 2005.

**PLEA NEGOTIATIONS:** Plea per 1192.5 PC, probation will be denied, the custody term will be for the stipulated term of 13 years eight months, waive conduct credits, waive any irregularities as to added counts, waive appellate rights, restitution to victim's family, including burial expenses, and as to Count III this occurred separately distinctly from Count I.

**CIRCUMSTANCES:** (Santa Rosa Police Department Report No. 04-17161 and Preliminary Hearing transcript dated November 15 and 16, 2004) On 09/07/04, at approximately 12:52 AM, officers were dispatched to Kaiser Hospital in regard to a stabbing that had occurred in the area of Piner Road and Coffey Lane. The victim, Ricardo Abadilla, suffered a single stab wound to his chest which had punctured his heart. Abadilla died at the hospital.

The investigation revealed that Abadilla had been at a party on Waltzer Road in which approximately 20 Norteño gang members from South Park attended. Around 9:00 PM, on 09/07/04, the defendant and Abadilla got into a fight in the garage of the residence. Other people at the party separated the

two. Prior to the start of the fight, Abadilla told Cruz "to back down." Neither Cruz nor Abadilla suffered any injury as a result of the initial fight. After the fight, they shook hands. A few hours later, Cruz instigated a second fight against Abadilla, Cruz stabbed Abadilla with a knife. Abadilla yelled out that he had been stabbed, and that Cruz had a knife. Cruz then walked away and Abadilla was given a ride to the hospital. Abadilla was conscious when he was taken to the hospital and it was noted he was bleeding from his chest.

On 09/07/04, at approximately 3:25 AM, the defendant went to the Santa Rosa Police Department, stating he was involved in a fight that might have resulted in death. When initially interviewed, he stated he arrived at the party on Waltzer Road around 3:00 PM with an 18-pack of beer. He consumed alcohol throughout the party. Around 7:00 PM, Abadilla arrived at the party and Cruz noted he had been having problems with Abadilla because of an issue between Abadilla and Cruz's brother. Cruz and Abadilla engaged in a fight inside of the garage of the residence. Throughout the rest of the party, they argued. Later that evening, they engaged in another fight outside of the residence. Abadilla was pounding him with his fists and Cruz used his arms and hands to protect himself. Abadilla backed away stating that he needed to go to the hospital. Cruz denied stabbing the victim and denied being in possession of a knife. Cruz had swelling on the left side of his face and head, including his jaw, eye, and head. He was informed that Abadilla had died.

During a subsequent interview, the defendant made the same claims adding additional information that he did not want to fight Abadilla initially, but accepted Abadilla's challenge anyway. While at the party after the initial fight, he began to feel uncomfortable and called his cousin for a ride. As he was leaving, Abadilla confronted him on the street and wanted to fight again. He did not want to fight, but Abadilla began pushing him. Abadilla would not stop hitting him and no one watching would break up the fight. Cruz became scared and pulled a knife out of his pocket and stabbed Abadilla in an attempt to get him off of him and to stop the hitting. After Cruz stabbed Abadilla, the victim backed away and asked to be taken to the hospital. As Cruz was being driven home, he threw the knife out of the window of the vehicle.

During a search of the defendant's residence, detectives found letters written to the defendant from his brother. In those letters, he directed Cruz to "jump" another gang member. He further told the defendant to do something "right away" about the problem with L.N. and "Ricky." He identified L.N. and "Ricky" as cowards in that they did not have the right to disrespect the gang. His brother also wrote about the night in which Cruz was disrespected and was "jumped" by the cowards. There was gang writing in the letters including, "South Park Norteños." Two red bandannas were located in the same dresser drawer as well as several other red pieces of clothing. A folding knife was also located. Several photographs were located in the residence with

INMATE COPY

Norteño gang members posing and throwing hand gang signs. Cruz was in several of those photographs.

Based on the autopsy performed on Abadilla on 09/28/04, the coroner determined the immediate cause of death to be "stab wound of chest." The coroner also noted Abadilla had abrasions on his face, on his right shoulder, contusions on his right arm, and right groin area all consistent with him being involved in a fight. The detective noted that when the defendant was interviewed his blood alcohol content was .07% and his blood later tested positive for THC.

JUVENILE RECORD:

| | | |
|---|---|---|
| **03/22/01** | **Santa Rosa PD** | **626.10(a) PC** |

> 05/11/01: 626.10(a) PC sustained as 12 month misdemeanor.
> 06/08/01: Formal probation granted.
> 09/25/01: Detained on Community Detention (see below entry).

> Circumstances: (Santa Rosa PD Report No. 01-05368) On 03/22/01, the minor was found in possession of a locking-blade knife at Santa Rosa High School. Another student had reported Cruz had "poked" her with the small knife during a break between first and second period.

| | | |
|---|---|---|
| **09/23/01** | **Santa Rosa PD** | **242/243(a) PC (2 counts)** |

> 10/19/01: Misdemeanor 415(1) PC sustained, declared a Ward in home of guardian, Community Detention vacated, two to three weekend work crews.
> 07/18/02: All proceedings dismissed, restitution fines transferred to Central Collections.

ADULT RECORD OF CONVICTIONS: The following information is taken from available FBI, CII, NCIC, III, DMV and local criminal justice records.

| | | |
|---|---|---|
| **01/11/03** | **Santa Rosa PD** | **647(f) PC** |

> 02/20/03: (MCR-414414) Failed to appear, bench warrant issued.
> 03/14/03: Warrant recalled, defendant cited to appear.
> 04/15/03: Convicted misdemeanor 647(f) PC, conditional sentence 18 months, be of good conduct and obey all laws, restitution fine, three days/Work Release.

| | | |
|---|---|---|
| **04/24/04** | **Santa Rosa PD** | **647(f) PC** |

> 05/17/04: Convicted misdemeanor 647(f) PC, conditional sentence 12 months, be of good conduct and obey all laws, do not use to excess any alcohol, restitution fine, fine, one day jail.

PENDING MATTERS:  None known.

INMATE COPY

PROBATION/PAROLE HISTORY:

Juvenile Probation: Cruz was placed on formal probation after sustaining a misdemeanor adjudication for having a knife on school grounds. Several months later he was declared a Ward after being involved in a physical fight and sustaining a misdemeanor adjudication. After a second fight at school, he was expelled from Ridgeway School. However, at his next review, it was noted that he had complied with the remaining orders of the Court, with the exception of paying his fines. All proceedings were then dismissed and his fines were transferred to Central Collections.

Conditional Sentence: The defendant received his first grant of conditional sentence at the beginning of 2003 for a misdemeanor public intoxication conviction. While on that grant he was arrested for and convicted of being intoxicated in public. He received a second grant of conditional sentence in relation to the new conviction and was on that grant when he committed the present offense.

Formal Probation: The defendant has not been subject to formal probation as an adult.

Parole: The defendant has not been subject to state parole supervision.

DEFENDANT'S STATEMENT: During the probation interview, the defendant was advised of his right to prepare a written statement. Should one be submitted prior to the filing date, it will be attached to this report for the Court's consideration. In regard to the present offense he stated, "I was convicted of manslaughter." He went to a barbecue at a friend's residence. They were all drinking throughout the day. In the late afternoon, he got into an argument with the victim, "about what I don't remember. I was pretty drunk at the time. Ricky and I were arguing back and forth throughout the day." He and Abadilla got into a "fist fight inside Fernando's garage." The fight was broken up and they separated. After the fight they did not argue anymore. However, he noted that there were a lot of the victim's friends at the party "who didn't like me."

Cruz stated, "Later, toward the night, I was so drunk. I called my cousin to come pick me up." As he was walking out to the car, he saw the victim. Cruz stated, "I saw Ricky. I was confronted by him." They got into an argument and "the next I know...get into a fight." At one point, Cruz was covering his face and head with his arms. He stated, "I quit fighting" and Abadilla continued to punch him. Cruz stated, "He keeps punching and punching to a point where I feel like I'm going down unconscious." Cruz was afraid that if he were unconscious, he would be beaten by Abadilla and his friends. The defendant felt "the need to protect myself. I pulled out the knife and I used it to get him off me. I had my head down. He was hitting me on the back of my head. I didn't know where I stabbed him. I found out a couple of hours later." After he found out the victim had died, he stated, "I turned myself in."

4

INMATE COPY

Cruz claimed the knife that he used on the victim was in his possession all day. When the undersigned asked the defendant why he possessed the knife he stated, "Just to have one. Something I did. It comes in handy sometimes." Cruz explained that he has had to use knives he possessed in the past to "cut cigars, smoke a blunt" and for cutting speaker wires. He denied possessing the knife for protection stating, "I never had a knife to protect myself from nobody."

In regard to his conduct Cruz stated, "I feel bad. I didn't want any of this to happen. I feel terrible...You know what I mean? Don't know how to explain." The defendant expressed a willingness to comply with any terms and conditions of probation that the Court might impose. When the undersigned asked him about his gang affiliation, he stated he began associating with the "South Park" Norteño criminal street gang when he was 18. He began associating with them "through my brother." At the time he "never thought anything bad about it." Now he has had time to reflect and realizes that continued gang affiliation is "not something I want to involve myself in. Something like this is a reality check." Cruz ended the interview by saying, "I'm sorry this happened...I'll try to do something better."

VICTIM'S STATEMENT:  On September 14, 2005, a letter was mailed to the victim's parents' residence informing them of the defendant's sentencing hearing. The letter also provided them with an opportunity to submit a statement regarding their feelings and opinions about the offense, as well as provide input regarding the defendant's sentencing. The parents were informed they could provide a written or verbal statement to the undersigned by October 5, 2005. In addition, the undersigned has attempted to make several phone calls to the victim's parents' last known telephone number. As of the date of this report, we have been unable to contact the victim's parents.

RESTITUTION AMOUNT:  In that we have been unable to contact the victim's parents, we will request that restitution be ordered in an amount and manner to be determined by the Board of Corrections.

MARITAL STATUS: Single.   CHILDREN:  None.

ADDRESS:  1577 Wright St., Santa Rosa, CA 95403   PHONE:  (707) 546-1774

EMPLOYMENT HISTORY:  The defendant worked at JDS Uniphase for the four months prior to his arrest in the present offense. At the time he was working for that company through Spherion Temporary Services. Prior to that, the defendant worked at Standard Structures for six months. He noted he was fired from that job because he was late to work. Prior to that, the defendant worked at Beds Beds Beds for approximately six months and was fired from that employment based on being late to work.

NET INCOME: $1,800 per month when working.   ADDITIONAL INCOME:  None.

INMATE COPY

EXPENDITURES: $600 per month. EDUCATION: The defendant advised that he did not graduate from high school due to not having enough credits.

SUBSTANCE ABUSE:

Alcohol: From the age of 17 to his arrest in the present offense, the defendant consumed alcohol on weekends at parties.

Drugs: The defendant began smoking marijuana around the age of 14. From the age of 18 to his arrest in the present offense, he smoked marijuana approximately two or three times a week. Around the age of 20, the defendant experimented with cocaine. He denied using any other illegal drugs.

Treatment: The defendant has never attended any type of substance abuse treatment. He advised that he had not made any arrangements for treatment as of the date of his probation interview. As to pursuing current treatment options, he advised that he did not realize he was able to do so while in custody. Cruz advised that he was interested in attending substance abuse treatment for his alcohol problem but did not believe his use of marijuana was a problem.

COLLATERAL INFORMATION:

Psychological: The defendant advised that he spoke with a psychiatrist while in custody in regard to the present offense.

PROBATION PRECLUSIONS/LIMITATIONS – RULE 4.413: (b) The defendant is limited from receiving probation pursuant to 1203(e)(2) PC in that he used a deadly weapon on another human being in the commission of Count II. (c) None noted.

CRITERIA AFFECTING PROBATION - RULE 4.414:

Favorable Factors: The defendant expressed a willingness to comply with the terms of probation. He may have the ability to comply with the reasonable terms of probation based on his age and physical health. Imprisonment may have a negative impact on the defendant. He may suffer some adverse collateral consequences on his life as a result of these felony conviction. The defendant expressed some remorse.

Unfavorable Factors: The defendant was armed with a knife. The defendant inflicted death upon the victim. The defendant has numerous prior convictions and adjudications. His prior performance on formal probation as a juvenile and on conditional sentence as an adult was unsatisfactory. The defendant was on conditional sentence at the time of the present offense. The defendant's ability to comply with the reasonable terms of probation may be hindered by his lack of formal education, his history of substance abuse, and his gang-related ties. If not imprisoned, the defendant may be a danger to others.

6

INMATE COPY

CIRCUMSTANCES IN AGGRAVATION - RULE 4.421: (a) None noted. (b)(1) The defendant has engaged in violent conduct which indicates a serious danger to society. (b)(2) The defendant's prior convictions as an adult and adjudications as a juvenile are numerous. (b)(4) The defendant was on conditional sentence at the time of the present offense. (b)(5) The defendant's performance on juvenile probation and on a grant of conditional sentence was unsatisfactory.

CIRCUMSTANCES IN MITIGATION - RULE 4.423: (a) None noted. (b) None noted.

APPLICABILITY OF SECTION 654 PC – RULE 4.424: At the time of his plea, the defendant waived 654 PC issues pursuant to Rule 4.412(b) based on his agreement to a specified prison term and therefore, 654 PC does not apply to Counts I, II, and III.

CONCURRENT/CONSECUTIVE SENTENCING – RULE 4.425: (a)(1) The crimes and their objectives in Counts I and III were predominantly independent of the crime and objective in Count II, indicative of consecutive sentencing. (a)(2) The crimes in Counts I and III involve separate acts of violence indicative of consecutive sentencing.

EVALUATION: In the present offense, one young man lost his life as a result of the defendant's criminal gang-related conduct. During the probation interview, Cruz was unable or unwilling to explain what he and the victim were arguing about before their first fight began. Cruz repeatedly stated that he was drunk and his state of alcohol intoxication at the time has impaired his memory of events of that night. While we have no doubt that he was under the influence at the time, it should be noted that he claimed he could not remember the details leading up to the second fight, but is able to clearly explain his actions during the fight that led up to the stabbing and his justifications for it. He is somehow able to remember exactly what was happening, what he was thinking, and how he felt just prior to the stabbing, but he cannot remember the details of the rest of the day. In addition, his statements about the stabbing are contrary to witness statements. Cruz was observed instigating the second fight with the victim and stabbing him during a mutual combat type situation, not while protecting himself from the victim's aggression alone.

When asked by the undersigned, the defendant denied possessing the knife for protection. He claimed he kept it on his person for cutting speaker wires and cigars. If he were not a gang member who had prior adjudications for possessing a weapon at school after "poking" another classmate with it, his statement might be more credible. The defendant's criminal record consists of convictions for public intoxication and juvenile adjudications for possessing a weapon and for being involved in a fight. It is unfortunate that he did not take advantage of his juvenile probation nor his grants of conditional sentence to address his substance abuse

INMATE COPY

7

issues and his criminality.

Mr. Abadilla's thoughts and his pain he felt as he died can only be imagined. The fact that the victim was able to walk away from the location where he was stabbed, to where his brother and friends could drive him to the hospital, indicates his death was not instantaneous and that he suffered for some period of time before he died. While the victim's pain and suffering ended that night, the grief and pain of his family and loved ones have had to endure will continue long after the defendant has been imprisoned.

The present offense exemplifies the tragic consequences that can occur when young men involve themselves in gangs. The defendant made a choice long before the present offense to entrench himself in gang culture. The night of this offense he armed himself with a knife and used it during a fight that he sought out with the victim. It should be noted that during the probation interview the defendant expressed some remorse and insight and expressed a willingness to comply with any terms and conditions of probation that the Court may impose; however, the defendant is limited from receiving probation pursuant to 1203(e)(2) PC in that he used a deadly weapon on another human being and we could find no circumstances that would make him an unusual case. Even without the limitation, we would find him unsuitable for local supervision based on the enormity and tragic consequences of this crime as well as the danger he presents to our community. We will therefore recommend that probation be denied and he be sentenced to state prison. The factors in aggravation prevail and the upper terms will be recommended. We will recommend that Count I be the principal term with the enhancement pursuant to 12022(b) PC and Counts II and III to be served consecutively as previously discussed under Rule 4.425.

<u>SUGGESTED PRISON TERM:</u>  See attached.

<u>987.8 PC RECOMMENDATION:</u>  No.

<u>BOOKING FEE:</u>  Required.

<u>RECOMMENDATION:</u>

The Probation Officer respectfully recommends:

That probation be denied and the defendant be committed to the Director of the Department of Corrections and Rehabilitation for the term of thirteen (13) years, eight (8) months; and

That the defendant pay restitution to the victim in the amount determined by the Victim's Compensation Board pursuant to Section 1202.4 PC, to be collected by the Department of Corrections and Rehabilitation; and

That the defendant register with local law enforcement authorities pursuant to Section 186.30 PC; and

This offense requires you to provide blood and saliva samples pursuant to Penal Code Section 296.

8

INMATE COPY

Willful failure to comply with this law may result in criminal prosecution under Penal Code Section 298.1; and

That the defendant pay a restitution fine in the amount of $8,400 to be paid in a manner to be determined by the Department of Corrections and Rehabilitation; and

Although not a condition of probation, the defendant pay a $20 Court Security Fee pursuant to Section 1465.8 PC; and

That the defendant be ordered to pay an additional restitution fine pursuant to Section 1202.45 PC, in the same amount as that imposed pursuant to Section 1202.4(b) PC. This additional restitution fine shall be suspended unless the defendant's parole is revoked; and

You have been convicted of a felony. You may not own or have in your possession or under your custody or control any firearm or ammunition, pursuant to federal and state law.


Dated: November 8, 2005

Respectfully submitted,

CORA M. GUY
Chief Probation Officer

APPROVED:

_____
Supervisor
I have read and considered
the foregoing report.

By:_____
JOHN RAMOS
Deputy Probation Officer

_____
Judge

NOV 1 5 2005
_____
Date
119525
11/05/ms


9

INMATE COPY